## SUPREME COURT.

## JOHN C. FELTMAN, respondent, agt. THE GULF BREWERY, appellant.

Where property (wood) is stored with a *bailee for hire* upon his wharf, an action for its *conversion* by him, cannot be sustained by proof on the trial, by the plaintiff, of merely the agreement for storing, and its delivery to the bailee, and a demand by the plaintiff and refusal by the defendant to deliver.

The plantiff, to entitle him to recover, must prove that the defendant was guilty of some neglect in reference to the care of the property, or an actual conversion of it by him.

This is the law applicable to the case, (as in this) where the property is not put into the *actual custody* of the bailee, that is, in his house or store house or into his hands, but is deposited on a wharf or dock on the bank of a canal, openly accessible to every person.

If the property has been intrusted to the personal care of the bailee, the plaintiff, upon proof of a demand and a refusal or omission to deliver, and no explanation given by the bailee, why the property is not delivered, is entitled to recover the value of the property.

The uncontradicted evidence in this case, on behalf of the defendants relieved them from any act personally or knowledge by them of the disposition of the portion of the wood which the plaintiff claimed to recover.

*Fourth Judicial Department, Buffalo, January, 1872. Before MULLIN, P. J., JOHNSON and TALCOTT, JJ.* APPEAL by defendant from a judgment at special term.

S. J. BARROWS, *for appellant.*

I. The defendant is a manufacturing corporation duly organized, created and incorporated under and in pursuance to the laws of the state of New York, for the sole and only purpose of making and selling beer and malt, and the branches of business connected therewith, and it filed with the clerk of Oneida county, on the 16th day of August, 1852, the certificate under which it was organized and incorporated,

and it had no authority to, and could not make the contract or agreement alleged in the complaint, and if it did make and enter into the same, it is *ultra vires*, and cannot be enforced by the plaintiff against the defendant (*Laws of* 1848, *chap.* 40 ; 2 *R. S.*, 5*th ed.*, 658 *and* 596, §§ 1, 2 *and* 3 ; *Beach* agt. *Fulton Bank*, 3 *W. R.*, 574 ; *People* agt. *Utica Ins. Co.*, 15 *J. R.*, 358 ; *New York Fire Ins. Co.* agt. *Bly*, 2 *Cow.*, 678 ; *Hanny* agt. *The City of Rochester*, 35 *Barb.*, 177 ; *McCullough* agt. *Moss*, 5 *Denio*, 565 ; *The Central Bank* agt. *The Empire Stone Dressing Co. & Shelton*, 26 *Barb.*, 23, *and case at p.* 568 ; *The Bridgeport City Bank* agt. *The Empire Stone Dressing Co.*, 30 *Barb.*, 421 ; *The Bank of Genesee* agt. *The Patchin Bank*, 3 *Kern.*, 309 ; *Bissell* agt. *The Michigan Southern and Northern Indiana RR. Co.* 22 *N. Y.*, 258, *opinion of* SELDEN, *J., p.* 281, 301, 302, 303 304, 305, *and cases there cited.*)

It is believed, that the opinion of COMSTOCK, J., is not the law of this state, since the court did not pass on the question discussed by him and SELDEN, J., and here raised ; and since the law is now believed to be settled according to the opinion of SELDEN, J., in England (*Buffett* agt. *The Troy & Boston RR. Co.*, 40 *N. Y.*, *note on pages* 179, 180, *and cases there cited ; Taylor* agt. *C. M. Railway, Law Rep.*, 3 *Exch.*, 356).

And the plaintiff is chargeable with notice of the authority conferred on the defendant to make the alleged contract, and of the limitations contained in its charter and by-laws (*Adriance* agt. *Roome*, 52 *Barb.*, 399 ; *Dabney* agt. *Stevens*, 40 *How.*, 341 ; *Akin* agt. *Blanchard*, 32 *Barb.*, 527.)

Nor can it be said, that the defendant ratified the act of any one in making the contract to store the wood, since the case nowhere shows, that the directors or proper officers of the corporation, ever knew of the contract, or the terms of the contract, or in any way sanctioned or approved of it, or received the consideration agreed to be paid for storing the same (40 *How.*, 341 *and cases cited on pages* 349, 350,) nor

is it a contract, that the defendant could ratify, since it is a contract that the defendant had no power or authority to make (*Hodges* agt. *City of Buffalo*, 2 *Denio*, 110 ; *McCullough* agt. *Moss*, 5 *Denio*, 567 ; *Peterson* agt. *The Mayor of N. Y., opinion of court*, 17 *N. Y.*, 454.)

II. No such contract or agreement as stated and alleged in the complaint, was, in fact, made by or on the part of the defendant, and none was proved before the referee.

1. It is not claimed by the plaintiff, that the contract, in fact was, made with any one but the young man found in the defendant's office by the witness, Charles Wilcox, and as stated by him.

2. There is no pretence, nor is there the slightest evidence in the case, that the young man found in the office of the defendant by the witness Wilcox, was the agent or servant of the defendant, or in the employ of the defendant, or was in any way authorized to make the contract for the defendant, or in any way bind or charge the defendant thereby, except the fact that he was found in the office of the defendant.

"The authority of agents of a corporation must be shown" (*McCullough* agt. *Moss*, 5 *Denio*, 567.)

3. The evidence on this point was duly objected to by the defendant, and the referee erred in overruling the objection to the same.

4. There is direct evidence in the case from the witnesses Michael McQuade, the president and managing agent of the defendant, and Frederick J. Harding, the bookkeeper, that no such such person was at the time in the employ of the defendant, or had any authority to make the alleged contract, and there is no evidence contradicting the evidence of McQuade and Harding, except what appears from the evidence of Wilcox, and from the young man being in the defendant's office at the time the witness was there. We submit that this is not sufficient to bind the defendant.

III. The wood in the complaint named, was never received

by or in the possession, or under the control of the defendant, nor did the defendant sell, retain, or convert the same, or any part of it, to its own use, nor was there a sufficient demand made therefor, nor did the defendant refuse to give up the same.

IV. The evidence of the witness Wilcox, as to what was said and done by and between him and the young man found in the defendant's office when he left the wood, was incompetent and immaterial, until the plaintiff had first shown that he was the agent or servant of the defendant, or authorized to enter into and make the contract for, and on the part of the defendant; and the referee erred in overruling the objection of the defendant thereto (*McCullough* agt. *Moss*, 5 *Denio*, 567.)

V. The referee erred in denying the motion for a nonsuit made by the defendant at the close of the plaintiff's case, on the grounds and for the reasons stated by the defendant, therefor, and the same should have been granted by the referee.

VI. The referee erred in denying the motion made by the defendant to dismiss the complaint and nonsuit the plaintiff at the close of the whole case; and we submit that for this error the judgment will be reversed.

VII. The referee also erred in neglecting and refusing to find as matter of fact, as requested by the defendant, in the 6th, 7th, 8th, 9th and 10th requests to find, at folios 64 to 72 of case and in finding as he did find, at folios 67 and 68, and to which the defendant then there duly excepted.

VIII. The judgment should be reversed, a new trial granted, and the order of reference vacated.

H. W. BENTLEY, *for respondent.*

I. This action was brought for the conversion by defendant of a quantity of wood stored by plaintiff on the defendant's dock in the city of Utica, in September, 1866.

The bill of exceptions filed by defendant, was modified by the referee upon settlement, as appears in the sixth exception and in the seventh exception. The referee holding and deciding, that the defendant having actually received and stored the wood in question upon a compensation agreed to be paid therefor, could not discharge itself from liability on the ground that the contract to store was *ultra vires,* and was bound to account therefor.

II. The defendant is a corporation. Michael McQuade was the president and managing agent of the defendant. He says, "I am virtually the Gulf Brewery."

The answer admits the storing of the wood upon the defendant's dock or yard, and the evidence shows the quantity. The compensation for storing was to be 2 shillings per cord. The agreement to store at this price was made by plaintiff's boatman with the party having the ostensible charge of defendant's business, and was apparently their bookkeeper, and assumed to act on their behalf At all events, the defendant had put it in that man's power to exhibit an ostensible and apparent authority to act for the defendant in the premises, and that act was never repudiated by the defendant.

Aside from this we think there would be, by implication of law, an agreement to pay a reasonable compensation for the storage of the wood in the absence of an express agreement to that effect.

This was not an exceptional case. The defendant was in the habit of receiving hops and lumber, and coal and wood on storage, for different parties.

Plaintiff sold twenty-one cords of this wood to J. H. Reed, and McQuade, by plaintiff's authority, sold eight cords. There being forty-seven cords in all, this left nineteen cords unaccounted for by defendant, and this deficiency was demanded by plaintiff, and refused.

III. An action of trover for the conversion of goods by an agent of a corporation, is maintainable against the company

(*Beach* agt. *Fulton Bank*, 7 *Cow.*, 485; *Yarborough* agt. *Bank of England*, 16 *East.*, 6; *Duncan* agt. *Surrey Canal Co.*, 3 *Stark.*, *N. P.*, 50; *Angell & Ames on Corporations*, § 384; *Watson* agt. *Bennett*, 12 *Barb.*, 196.)

A corporation will be liable for an injury done by its servants, if under like circumstances, an individual would be responsible (5 *Barb.*, 79, 90; 22 *N. Y.*, 258, 264–5, &c.)

IV. The defendant was bound to take common and reasonable care of the wood, and is liable for ordinary neglect (*Foot* agt. *Storrs*, 2 *Barb.*, 326.)

The defendant is bound to give some account for the property before he is entitled to cast upon the plaintiff the onus of proving negligence (*Bush* agt. *Miller*, 13 *Barb.*, 482.)

The defendant, assumed a right to dispose of the wood, and exercise a dominion over it to the exclusion of plaintiff's right and in defiance of it. This is conversion (*Bristol* agt. *Burt*, 7 *Johns.*, 254; *Murray* agt. *Burling*, 10 *Johns.*, 172; *Reynolds* agt. *Shuler*, 5 *Cow.*, 323.)

*By the court*, MULLIN, P. J.—The referee finds, that there was an agreement between the parties, that the plaintiff might store his wood on defendant's wharf, for which he was to pay two shillings per cord. There were forty-seven cords in all, of these the plaintiff sold twenry-one cords, and McQuade with the consent of the plaintiff took eight cords, leaving eighteen cords which should be left on the wharf. The action is to recover the value of the eighteen cords.

It is not necessary to decide whether the contract between the parties, created the relation of bailor and bailee. It was, probably, a hiring of the use of the land for a storage of the wood, but assuming, that the relation between the parties was, that of bailor and bailee, the bailment being for hire, the defendant was bound to exercise ordinary care, and is liable for ordinary neglect (*Story on Bailments*, §§ 444, 451.)

The plaintiff proved on the trial, the agreement for storing

the wood, its delivery on the wharf, a demand of it, and a refusal to deliver.

Was the plaintiff, upon this evidence, entitled to recover?

The plaintiff was bound to prove, in order to entitle himself to recover, that the defendant was guilty of some neglect in reference to the care of the property, or an actual conversion of it by him (*Arent* agt. *Johnston*, 1 *Daly*, 347.)

If the property had been intrusted to the personal care of the bailee, the plaintiff, upon proof of a demand, and a refusal or ommission to deliver, and no explanation given by the bailee why the property is not delivered, is entitled to recover the value of the property, as it is presumed in such a case, that the bailee has appropriated the property to his own use.

If the bailee proves, that it was destroyed by causes which he could not control, or if it is burned or stolen without fault on his part, the plaintiff cannot recover without proof of an actual conversion, or that the loss resulted from the negligence of the defendant (*Arent* agt. *Johnston, supra.*)

Such is the law as to property placed in the actual custody of the defendant. By actual custody, I mean in his house or storehouse or into his hands.

When, however, the property is not put into his actual custody, but is deposited upon his premises unprotected by an inclosure, and consequently, accessible to all persons desiring to go thereon a mere demand and omission to deliver may not be evidence sufficient to entitle the plaintiff to recover.

The wood in question was deposited on a wharf or dock on the bank of the Erie Canal. There is no proof that it was in any manner inclosed, or that the defendant had any means to prevent the wood piled upon its wharf from being stolen or carried off by trespassers.

Under these circumstances, the defendant was under no obligation to exercise any care over the wood, except to prevent (if within the power of its agent) the unauthorised removal of it.

It would be most oppressive to require a bailee in order to protect property left upon a public dock or a vacant lot owned by him, to employ a man to guard it or to erect a building or other structure over or around it which might be locked, or otherwise secured against persons not lawfully entitled to deal with the property.

What could defendant's agents have done to protect the plaintiff's wood, that they did not do unless it was to place a guard over it, and fence around or building over it.

It seems to me, that the plaintiff did not prove enough to entitle him to recover.

But if I am wrong in this, and sufficient was proved to entitle him *prima facie* to recover, the defendant relieved itself from the force of the evidence on the part of the plaintiff.

McQuade and Harding were the only persons connected with the brewery, that had any right to act for the defendant, except that when they were absent other employees might sell ale.

Both of these men swore and testified, that they did not sell or dispose of the wood in question, nor do they know of any disposition being made of it, except what McQuade, took by plaintiff's consent, and what plaintiff himself sold to Reed. These witnesses also testify, that the books show no money received for wood or for storage of it.

There is no evidence in the case to lessen in any degree, the force of this evidence on the part of the defendant.

Assuming the facts so sworn, to be established, it follows, that neither the defendant nor its agent had converted the wood to its, or their use, nor had it been sold or otherwise disposed of by it, or its agent.

It seems to me, the defendant established a perfect defense to the action, and the judgment of the referee must, therefore, be reversed, and a new trial ordered, costs to abide the event.