By the Court.—Van Vorst, J.
The learned counsel for the plaintiff urges that the cause of action originated in the defendant’s deceit, and not being assignable, did not pass to the assignee in bankruptcy.
He would, in substance, place the plaintiff’s cause of action in the same category with personal torts, such as slander and assaults, which do not pass to the personal representatives of the person injured, but die with his person.
*58 It has been held that a cause of action arising in a tort, although it affected property, was not assignable. In Gardner v. Adams (12 Wend. 297) it is said, that a cause of action for a conversion of personal property is no more assignable than one arising out of an assault upon the person. But Hall v. Robinson (2 N. Y. 295) comments upon Gardner v. Adams, and holds differently with respect to such a chose in action.
In Hoyt v. Thomson (1 Seld. 320, 347) this subject is discussed by Paige, J. He says : “All choses in action, embracing demands which are considered as matters of property or estate, are assignable, either at law or in equity. Nothing is excluded but mere personal torts, Avhich die with the party. A claim, therefore, for property fraudulently or tortiously taken or received, or wrongfully withheld, and even for an injury to either real or personal property, may be assigned.”
This case points out the true line of demarcation in general terms, between causes of action originating in torts, which may and may not be assigned.
Harris, J., in Hodgman v. Western R. R. Co. (7 How. Pr. 494), is quite clear and distinct upon this subject. “ Every right of action involving life, health or reputation,” belong to a class which cannot be assigned.
But when it affects “ the estate, rather than the person,” the right of action may be bought and sold. And he adds: “Such a right of action, upon the death, bankruptcy or insolvency of the party injured, passes to the executor, or assignee, as a part of his assets, because it affects his estate, and not his personal or relative rights.”
These authorities make the proper disposition to be made of this case reasonably clear, notwithstanding the cases cited by the learned counsel for the plaintiff, *59 principally, however, from other States. He refers us to Sommer v. Wilt, 4 Serg. & R. 19, 28; Shoemaker v. Keely, 2 Dall. 213; O’Donnell v. Seybert, 13 Serg. & R. 54; Read v. Hatch, 19 Pick. 47; Henshaw v. Miller, 17 How. U. S. 212, as holding in substance, that in order to a survival of certain actions, arising ex delicfac, the injury must be actual and direct to property, and not indirect and incidental, and that a cause of action arising through deceit and fraud would not survive. However it may be elsewhere, the rule, in this respect, as laid down by our own courts, must prevail.
Although it is quite clear that the plaintiff was induced, through the defendant’s fraudulent statements, to become his partner, and place his money within his reach and disposal, yet it is equally clear that it was the defendant’s purpose, through the deceit, to reach the money.
The injury to the plaintiff affected his property rather than his “personal or relative rights.”
And this money, which the deceitful representations were designed to secure, the defendant, according to the plaintiff’s showing, has in fact converted and applied to his own advantage. The fraudulent representations were designed to, and did, in fact, despoil the plaintiff of his estate, to the immediate and direct pecuniary advantage of the defendant. Through the fraud the plaintiff’s money passed from himself to the defendant.
In case the plaintiff had died before going into bankruptcy, we think it clear that the claim would have passed to his personal representatives, and could have been enforced by them (2 R. S. 447, §§ 1, 2).
Doubtless, had the defendant, through fraudulent representations, obtained the plaintiff’s horse, an action for its recovery, or for damages, would have passed to his personal representatives or assigns (McKee v. Judd, 12 N. Y. 622; People v. Tioga Com *60 mon Pleas, 19 Wend. 73; Hawk v. Thorn, 54 Barb. 164).
We cannot perceive that it changes the case, where the object sought to be secured by the fraud is money rather than ordinary chattels.
It is urged by the counsel for the plaintiff that Zabriskie v. Smith (13 N. Y. 322) is an authority against the assignability of the plaintiff’s causé of'action. I do not think so. In that case there was a fraudulent representation as to the solvency of a third person, who obtained the property and reaped the immediate benefit.
That wa,s also the point in Read v. Hatch, and Henshaw v. Miller (supra).
But that is not the case we have under consideration.
Here the deceit perpetrated by the defendant was to get into his possession and under his control, for his own advantage, the plaintiff’s property, and his fraud was successful. It would, ind,eed, present an anomalous case if the plaintiff, ruined by the defendant’s fraud, and having been discharged in bankruptcy, through his inability to pay his debts, should now be allowed to recover to his own use the moneys he paid into the copartnership which became insolvent, and leave his creditors helpless and without remedy.
Both law and equity are well satisfied when this chose in action, representing the plaintiff’s despoiled estate, passes to his assignee in bankruptcy, as we are of opinion it does, under the revised statutes regulating the assignment of the property and estate of the bankrupt, to be enforced for the benefit of his creditors.
The order appealed from is affirmed with costs.
Speir, J., concurred.